Case number 19-3907. Thomas Smith v. Woolace Electric Corporation et al. Four arguments not to exceed 15 minutes per side. Mr. David W. Zoll for the appellant. Please proceed. Thank you, your honor. May it please the court. This case involves a rescue attempt resulting from a traffic accident on an icy interstate highway bridge in the early morning darkness hours of December 31st, 2015. The weather was bad, freezing fog and precipitation, temperature 29 degrees, and there was a wind. The plaintiff and his companions, who had left their homes in Indiana earlier that morning, came upon an overturned van that extended into the highway lane of travel. There was a factual dispute whether there were any lights on the overturned van, which was lying on its side and facing oncoming traffic. The plaintiff and his companions stopped to help. There were no other vehicles or safety personnel on the scene at the time they stopped. The driver of the vehicle in which my client, the plaintiff, and his companions were riding first turned on his four-way flashers and pulled over. Then the driver of the van my client was riding in and the plaintiff went to the overturned van to look for victims. Some testimony was that they did not know that the driver and passenger of the overturned van were sitting on the guardrail further down the highway without their coats, wearing only t-shirts, one with a broken neck, and one with a fractured pelvis. About 10 minutes after the plaintiff and his companions had stopped to help, a third vehicle driven by McManus came along, lost control, changed lanes, and hit the plaintiff, the vehicle jumping the guardrail and rolling down the embankment. My client, the plaintiff, had no recollection of the accident because of his serious head injuries. He suffered significant neck, head, and facial fractures, lost wages. His medical bills totaled over a million dollars. What was your client doing at the time that he was hit? What rescue activity was he engaged in and what are the disputed facts and the evidence to support that he was doing that rescue activity? The testimony of the van driver was that he didn't know that the guys that had been in the van had left the van and were further up the road. He testified, the driver of the vehicle that stopped, he testified that he and my client had gone back to the van that they had passed that had overturned and were looking in there to see if there was anyone in, near, or around the van that needed help. That was a disputed fact. There was some confusing testimony that one of the defendants stated that my client's stopped past them and they would have had to walk past them to get to the overturned vehicle. But the other victim, the other guy who needed help, he said no, that our vehicle had stopped, as did the van driver, before they had come to the guys who had run out of the overturned van. Those fellas stated, the overturned van guys stated, that they had scrambled out of that vehicle with their very serious injuries and had walked as far as they could, that they still felt that they were in danger from oncoming vehicles like the one that hit my client. They stated that they were cold. Your client didn't testify at all, did he? Pardon me? He wasn't able to to testify, Judge Seiler. He had very serious head injuries. He had no memory of that whole day. Your theory of the case is that your client was trying to rescue Mr. Garza, who was the driver in the original accident, correct? Yes, Your Honor. Is your case contingent on showing that Garza was negligent? Yes, it is. Didn't the jury find that Garza was not negligent? Yes, they did, Your Honor. That's one of our assignments of error that should have been grounds for a new trial, because the evidence was overwhelming, overwhelming that Garza was negligent. Garza admitted that he had lost control, failed to maintain control of his vehicle. He admitted that he knew that there was a sign that warned that the bridge could freeze before the roadway, and there was no evidence whatsoever that he was not negligent. Therefore, the verdict that the first interrogatory that the jury was asked to answer was whether or not the defendant was negligent. The jury said no, even though the evidence was overwhelming that he was negligent, and then they went on as instructed by the interrogatories to enter a verdict for the defendant. We believe that your entire case then hinges on a new trial being appropriate because the jury verdict was against the clear weight of the evidence. I don't think so, Your Honor, because if the judge had instructed them on the rescue doctrine, which was the fundamental foundation of our case, was that the rescue doctrine applied. The jury couldn't connect the negligence of the second driver to the negligence of the first driver because they didn't have the rescue doctrine. So when the court pulled away the rescue doctrine from the jury instructions, he left the jury foundering with no way to connect the two accidents. My understanding of the pattern instruction in Ohio is that it essentially relieves you of the proximate cause requirement from the original negligence. In other words, the rescue has to approximately cause the injury to the rescuer, but you still have to show as a threshold matter that the original defendant, or that Garza in this case, was negligent. So why would the rescue doctrine instruction have affected how the jury considered whether Garza himself was negligent in operating the vehicle? It's a good question, Your Honor. I think the jury was confused and just threw Garza out completely because they connected the second accident to the injuries in the absence of the rescue doctrine. I would agree with Judge Moore and with you, Judge Albandian, that it was a critical fact that there be evidence that Garza was negligent and in fact that we did establish beyond the overwhelming weight of the evidence established that he was negligent. Had the jury found negligence in no proximate cause, that's another matter. But they didn't find negligence and that was against the manifest weight of the evidence and that's why I would agree with Judge Moore. The case is much clearer if a new trial is granted on that grounds alone. I was just going to say, is it per se negligent and negligence in Ohio for a driver to come upon a slick point and slide across the highway? Is that what you're depending upon or something else? Your Honor, you're correct. We believe it was negligence per se because Ohio law requires, and you cited some cases in our brief, that no matter what the road conditions are, a driver has a duty to maintain control of his vehicle and a failure to maintain control renders him negligent as a matter of law. Yes, sir. The case that we cited that was a semi-truck coming down a hill and at the bottom of the hill was a curve and the road was wet. He lost control in the curve and went left of center and hit an oncoming vehicle. The failure to maintain control in that case made them liable. In this case, he admitted there was no evidence that he wasn't negligent. There was no evidence at all that he wasn't negligent. The only evidence was that he failed to maintain control and that was the proximate cause of this accident. The main point I want to make here, and we can talk about the evidence with respect to the new trial, but in addition to that, by taking away the instruction on the rescue doctrine, really what the court did was he put his finger on the scale. The evidence was that the plaintiff had a reasonable belief that there was a danger that invited rescue. They didn't know there was nobody in the overturned van or nearby the overturned van. The defendants and his passengers admitted they felt in danger, that they had tried to walk as far as they could, that they were cold and in pain and could go no further. Unlike the estate of Minster case, upon which the defense and the trial court relied, there was no one providing aid to the accident victims when the mere act of them putting their flashing lights on their vehicle served as some measure of safety to help the victims. These hazard lights were needed until after the safety officers arrived. Finally, there was also a duty owed that they also were helping the general public. They were protecting the general public from the hazard which was created by this overturned van. That was also encompassed in the rescue doctrine, which extends not just to the victim or the person who's hurt, but also to those that are the public that are coming down the highway. Thank you. Your time is up. Thank you very much. Thank you, Your Honor. Mr. A. Harris. Hey, police, the court, counsel, thank you very much for doing this. The defense believes that the appeal in this matter ultimately failed because the defendant's negligence was a jury issue. Since the jury could reasonably conclude that defendants weren't negligent, the remainder of the issues on appeal become academic. What Mr. Smith now would like this court to do would be to turn this jury issue, this issue of fact, into an issue of law, which is the exact same thing that he asked the district judge to do. The district judge rejected that request because he agreed that it was an issue of fact for the district judge to decide, and the jury could reasonably conclude that Mr. Garza was not negligent in operating the van. Your opponent has argued that it's a matter of law, I guess, or the clear weight of the evidence was that he was not in control of his vehicle and therefore Garza was negligent. How do you address that? Mr. Garza testified that he drove at five miles an hour less than the speed limit for the conditions that he perceived, but it wasn't icy until he got to the overpass and lost control of his vehicle solely because of black ice on the overpass that he didn't foresee. That, Ohio law does not equate with having an accident means you're automatically negligent. You still can be excused because of the circumstances when those circumstances are not foreseeable as in this case. Since the black ice was not foreseeable either to Mr. Garza or Mr. McManus, to the driver of the Amish vehicle, to the passengers of the Amish vehicle, or even the state troopers, the issue becomes whether or not the jury could reasonably conclude that it was not foreseeable to Mr. Garza and therefore he's excused from complying with the statute under the circumstances. That's the instruction that the court gave that the law may impose a duty upon you, but the circumstances may excuse you from compliance with that duty. Since the evidence in this case was in dispute, the jury's resolution of it is what this court ought to affirm. Rather than turning this back into an issue of law, since no motion for directed verdict was ever filed, no motion for summary judgment was ever filed, obviously the parties concluded that this was an issue for the jury to resolve and now having the jury resolve that, that's an issue to outstand. Because that's the foundation issue for the appeal in this matter, the remainder of the issues, I think, are not there for the court to decide. I take it their argument is there was a legal ruling before the case went to the jury about the rescue doctrine. Had that ruling come out the other way, the instructions would have been different and therefore kind of embedded in their new trial motion is this legal issue about whether this instruction, it's essentially an instruction issue, isn't it? I mean, they're allowed to argue that, right? Oh, certainly. Yeah, certainly they're allowed to argue it, I guess my point is the jury never would get to the rescue doctrine in this case once they determined that Mr. Garza was not negligent, even if the instructions had been given. Can I ask you a question? If the rescue doctrine had applied, that instruction would have been inserted into the instruction somewhere. Would, and I take it there would have been another or additional special questions for the jury to answer? In other words, would question one have been the same? Was Garza negligent? Yes, because unless Garza was found to be negligent, there's no need to consider the rescue doctrine because the rescue doctrine would in effect excuse the comparative negligence of being offset against any negligence of Mr. Garza. Once the jury said Mr. Garza wasn't negligent, there's no need to consider the rescue doctrine because it's simply not going to help save the plaintiff's case at that point. So in other words, the rescue doctrine does not protect somebody who is trying to rescue someone who was not negligent. That's correct, because there's no argument to be made that the person that was rescued should owe compensation to the person injured trying to rescue them when they weren't negligent to begin with. It doesn't, obviously doesn't help out the person that gets injured trying to rescue them, but the legal theory is that if you're rescuing someone, you're excused from some of the requirements that you would have to act for your own safety to exercise ordinary care because you're trying to rescue someone. But when the circumstances which caused the original accident have ended or there's no one who is really in need of being rescued, then the rescue doctrine doesn't apply. But those are two different questions, whether someone like Garza needs to be rescued or whether someone like Garza was perverse to me, that the doctrine would allow someone like the plaintiff here to collect only if Garza is negligent. But if the plaintiff here was just being a good Samaritan, the plaintiff has no right to collect if Garza was being a good driver, but simply... Well, if Mr. Garza was not negligent, then the plaintiff wouldn't have a cause of action against him at all. And rather than having to be concerned with whether there should be any limitation on the recovery because of comparative negligence on the part of a good Samaritan, when the person being rescued wasn't negligent to begin with, there's no cause of action there. I take it there's no but-for causation at that point? Correct. There can be a very long chain of events for but-for causation, and we can debate, I suppose, proximate causation, but the rescue doctrine doesn't relieve the plaintiff of having to prove but-for causation. Is that right? That's correct. Because typically in that situation, the plaintiff is injured because he's involved in trying to resolve the original situation by rescuing whoever was injured, say, in an automobile accident or some other way. But Ohio law is clear that that has limits. In other words, it doesn't just continue on and on and on. Once the danger to the person who supposedly needs to be rescued has ended, then the rescue doctrine is no longer applicable. Let me ask you a question. I suppose switch gears slightly, but on the question of whether plaintiff was rescuing or engaged in a rescue activity at the time that he was hit, it seems like the plaintiff is arguing that the evidence is disputed on whether they were is disputed or not in the record. I don't think there is any dispute in the record. The testimony from Mr. Whitaker, who was the driver of the Amish van who walked up the overpass with Mr. Schwartz, was that they knew when they, as soon as they looked at the van, that there was nobody in it. And they could have at that point turned around and walked back down the hill, but the testimony is that they stood around that van for another 10 minutes. They had dark clothing on. They didn't have any flashlights. And when a car did approach, they decided to get the heck out of there rather than try to warn anyone. And all this time, there's two guys sitting down there on the guardrail that they could have put into their van who were seriously injured. Is it 10 minutes the time lapse between when they looked in the van and when the other vehicle came? Correct. That was a testimony of Mr. Whitaker. I thought there was some dispute about that 10 minutes, that Whitaker wasn't exactly sure when he was cross-examined or whatever that it was 10 minutes. Well, he waffled on that some, but Menno Schwartz, who was the injured person's father, was very clear that they were around that van for at least 10 minutes. He had no idea why they went up there because his son had talked with the two gentlemen sitting on the guardrail before he ever went up there. It made no sense to him because he knew that the two guys who were sitting on that guardrail were the ones who were injured and involved in the accident. And they were told then that 911 was on the way because the car that had stopped earlier had called 911. Was there testimony to suggest that they were going to attempt to wave off any other vehicle? There was a suggestion by Mr. Garza that that's possibly what they were doing, but Mr. Whitaker and Menno Schwartz Sr. both said they didn't have any flashlights. Menno Schwartz Jr. was wearing dark clothing, so they didn't have any capability of warning off any oncoming vehicles. And there was some dispute as to whether or not there were lights on on the van or not that had crashed. Although Mr. McManus, who was the driver that struck Mr. Schwartz Jr., said that he saw lights on the van and managed to avoid it because the impact between Mr. Schwartz Jr. happened quite a distance before he even reached the overturned van. So I don't think that there is an issue of fact here as to whether or not Mr. Schwartz was aware before he walked up the hill that the two gentlemen who were sitting on the guardrail were the ones who had been in the van and were the injured parties. They were the ones that needed rescuing. Why nobody did anything to put the two of them into the Amish folks van, I don't know. Because as Mr. Sowell said, records show they were sitting there in t-shirts and in freezing weather but with some serious injuries. The rescuing, if it was going to happen, should have happened then rather than going up the hill to look at an empty van. The appellants also claimed that the court should have permitted into evidence a citation that was on that point in the Brunner decision and revised code section 2307.60, make it very clear that the district court correctly permitted a citation. Can I ask you a question? I've been confused a little bit by the issue. Judge Zuhari cited a case to keep the evidence out and it looked to me like he was deciding the issue under federal rule of evidence 401 and 403. Why do we care about what Ohio law says? Isn't this a question of federal law and application of the federal rules of evidence? I don't think it is, but I think also it's a state law question because it is a substantive issue of admissibility of evidence on an issue of the Brunner proof as far as negligence is concerned. And I think Ohio law very clearly would not let a mere citation into evidence to prove that a party was negligent if there'd been an admission in the form of a federal court case. Do you have a federal court case that would say we would look at the state law on this kind of an issue? I would simply refer the court to the general rules that would apply state law on substantive issues and federal law on procedural issues. I think this is more of a substantive issue than a procedural issue and that's why I think that state law would apply. Isn't the admissibility of evidence a classic procedural issue? I mean, it is a classic procedural issue, but when you have a state statute that says you can't use this type of evidence to prove something, I think it's more than simply a procedural issue because it goes to the elements of a cause of action and how you prove them. But it's not connected to any... Well, first of all, I'm curious. I don't think the statute goes as far... I mean, it doesn't specifically prohibit using this evidence. There's a statute that says that if it's a felony or something, you can use it as res judicata, but that doesn't necessarily prove the negative. The cases in Ohio seem pretty uniform that you can't use this kind of evidence. But all of those cases apply generally across the board to all causes of action. I mean, most eerie questions we're asking whether the substantive state law provides a rule of decision for this particular cause of action. But the Ohio cases on this issue, they're not limited to any particular case that would be any case, right? I think so. I think any case in which you have someone who's been cited either in a motor vehicle accident or for a minor misdemeanor or something that would involve less than a year of jail time. So if this were not in the Ohio code, but this was just Ohio rule of evidence, you know, 907 or something, and it was in their evidence code, we wouldn't apply it, right? Probably not. I think you would look to federal rules of evidence and any federal case that directed that. The case cited by the district court in their opinion, I think addresses that issue. The other issue that they've raised on appeal is the fact that the two accidents were in their view related and that evidence should have been admitted that they were related. But I think the argument that has been made misses the district court's point. And that is that in effect by asking those questions, they were attempting to get in expert opinions without designating those witnesses as being experts, without laying any kind of foundation for an expert opinion to be presented. And that's why the district judge refused to admit that testimony. Ultimately, I think the evidence came in from the other trooper that testified. So it may be one of the, you know, no harm, no foul kind of things. Thank you. Your time is up. So thank you very much. Thank you very much. I think we have some rebuttal time left. Thank you, your honor. Just a couple of points that I want to clarify. First of all, the evidence testimony was that 10 minutes had expired, about 10 minutes had expired from the time that the rescue van arrived on the scene until the second, until my client was injured. So that was the 10 minutes. It wasn't that they got out of the van, they walked up the hill, they got to the end, and then they stood around up there doing nothing for 10 minutes. That it was a total of about 10 minutes from the time they arrived on the scene. Secondly, when they got to up the hill to the overturned van, they had to look in the van, they had to see if anybody was in it. And then they started to look around to see if there was estimated had taken place. Menno Schwartz Sr. testified 10 or 11 times that he didn't know, he didn't remember, he wasn't sure where his son was at, although there was some initial testimony that he thought his son was with him when he went down the hill to talk to the, and found the guys against the guardrail. So there's a big dispute. Wasn't there testimony, wasn't, didn't Whitaker testify though, that the plaintiff was hit after they had looked in the van? Yes. Put aside the 10, put aside the exact timing, but it was certainly that they had looked in the van, and then the next thing he knew he was hit or whatever. Right. But that doesn't mean that they had completed their kind of attempted rescue, they had completed looking in the van for additional victims and they were done at that point? Yes, Your Honor, that's true. But you can't just snap your fingers and say the rescue's over, we found nobody in the van, and then you get hit, and then you're not entitled to the protection of the rescue doctrine. It was a continuous, ongoing problem. And the other point that I wanted to make, and that's a good entree to it, Your Honor, is that by them being there and turning on the a substantial protection to the guys who testified, the defendants who testified, they were afraid somebody else was going to come along and hit them. They felt that they were in great danger at the time my client was hit so badly. Now, when the McManus came over the top of the overpass, he saw one set of flashing lights, one set of flashing lights. He never said, as Mr. Ayers implied or actually stated, it's not true. He never said he saw the lights of the overturned van. No, he said he saw one set of flashing lights. And we know that our client's van had their lights on. That's the first thing they did. Let me ask you a question, though. Are you saying that having turned on the lights, that everything that happened after that was part of the rescue? I mean, again, but why if you stop your van, you turn on the lights, that rescue event is over, a rescue activity is over, then you go do something else. I mean, does it just make are you saying it just makes everything they did after they turned on the lights is just part of the rescue? I believe it did, Your Honor, until the EMTs and the safety people came on the scene because they were vulnerable at that point. They testified they felt in serious danger. They were they were they would have gone somewhere else, but they were too injured. They were in too much pain and they were and they were too cold to go any further. And and so once you get on the scene and you activate your flashers, you have to stay there until the EMTs arrive. And now and our client acted reasonably during that period of time, even though under the rescue doctrine, his negligence shouldn't be imputed. The fact that he had gone up the hill to look for other victims and wasn't aware that these guys were down below is in absolute furtherance of the rescue. The rescue doctrine encourages us as a people to care for those who are hurt, in danger and in need of assistance and to protect others put in harm's way by the negligence of those who cause the danger to others. The trial court ruling is a step backward in our arc of civilization. As Justice Cardozo stated in the Wagner versus International Railway case, danger invites rescue. But the trial court implied that we should just walk on by, walk on by those on the side of the road who have serious injuries, walk on by the danger created by an overturned van extending into the lane of travel and ignore the danger which continued to those who come after us. We ask this court not to encourage this type of a ruling and to expand, not to limit the rescue doctrine, but to permit it to be applied as it was intended to be applied. Thank you. Thank you both for your argument and the case will be